UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

AGENCY.COM, LTD.,

      Plaintiff,

-against-

FINANCIAL TIMES - PERSONAL FINANCE LIMITED and FINANCIAL TIMES GROUP LTD.,

      Defendants.

---

Civil Action No.

**COMPLAINT**

**Jury Demanded**

00 - 12605 NG

---

Plaintiff AGENCY.COM, Ltd. ("AGENCY.COM"), by its attorneys, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., for its complaint against defendants Financial Times - Personal Finance Limited and Financial Times Group Ltd. (collectively "Financial Times") alleges as follows:

### Jurisdiction and Venue

1.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) as the matter in controversy is between citizens of a state and citizens of a foreign state. The amount in controversy exceeds the sum of $75,000.00, exclusive of interests and costs.

2.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the violations of law complained of herein occurred in this judicial district.

1

## Parties

3.  AGENCY.COM is a corporation organized and existing under the laws of the State of Delaware and has its principal place of business at 20 Exchange Place, New York, New York 10005. AGENCY.COM is an Internet professional services firm which provides integrated strategic, creative and technology services to its clients.

4.  Financial Times - Personal Finance, Limited is, upon information and belief, a corporation organized and existing under the laws of England and has its principal place of business in England at Number One Southwark Bridge, London SE1 9HL.

5.  Financial Times Group Ltd. is, upon information and belief, a corporation organized and existing under the laws of England and has its principal place of business in England at Number One Southwark Bridge, London SE1 9HL.

## Factual Allegations

6.  In early April 1999, Financial Times and AGENCY.COM entered into a business arrangement pursuant to which the Boston, Massachusetts office of AGENCY.COM agreed to provide consulting services to assist Financial Times in the development of a website, known as www.FTYourMoney.com, that would provide personal finance services to the public. This business arrangement also encompassed the performance of consulting work by AGENCY.COM with respect to the Financial Times' website known as "investorschronicle.co.uk." The business arrangement between AGENCY.COM and Financial Times is memorialized in at least a series of Letters of Engagement with attached terms and conditions signed by both parties (the "Agreements"). The Agreements were transmitted between AGENCY.COM's offices in Massachusetts and Financial Times in England.

2

7. The Agreements provided that AGENCY.COM would deliver consulting services to Financial Times, and that Financial Times would pay for these services on a time and materials basis in accordance with a price and payment schedule agreed to by the parties.

8. As part of its work on the websites, AGENCY.COM consulted with Financial Times. Financial Times' requests and demands influenced AGENCY.COM's work on the websites. For example, Financial Times requested sites that would be prepared on a tight budget and required that the sites be ready for launch within an aggressive timeframe. At the same time, Financial Times was required to contribute work, including content, to the completion of the websites. Financial Times caused delays in AGENCY.COM's work by providing late delivery of content, failing to sign-off on aspects of the project in a timely manner and by making continual requests to change the scope and functionality of the websites. Despite Financial Times' delays in completing their work for the websites, AGENCY.COM persevered in its work on the websites. Teams including employees from each of AGENCY.COM and Financial Times performed a substantial portion of the work on the relevant websites at AGENCY.COM's facilities in Massachusetts.

9. AGENCY.COM performed the services required under the Agreements, together with certain other services not specifically detailed in the Agreements, but requested by Financial Times, and satisfied all of its obligations under the Agreements.

10. The FTYourMoney Website was launched successfully on December 6, 1999. On December 14, 1999, Financial Times issued a press release announcing the successful launch of FTYourMoney.com.

11. Since its successful launch, the FTYourMoney Website was in full

commercial use for a period of over 10 months and has been operating and exploited by Financial Times during that entire period. On information and belief, the FTYourMoney Website continues to be in full commercial use and is still operated and exploited by Financial Times.

12.     Financial Times has promoted the success of the FTYourMoney Website and congratulated AGENCY.COM on its work on several occasions. On March 6, 2000, Financial Times issued a press release announcing that "[i]n the first three months of operation, FTYourMoney.com is already establishing itself as the UK's leading personal finance website and is ahead of its revenue and traffic growth targets."

13.     In April 2000, AGENCY.COM and Financial Times mutually agreed to terminate their relationship and disengage by early July 2000. At that time, Financial Times made no mention of any prospective failure to meet its payment obligations for work done by AGENCY.COM, nor did it call for the immediate end to work on the projects. In fact, the disengagement agreement did not affect the amounts due to AGENCY.COM for work performed under the Agreements.

14.     Throughout the engagement, Financial Times made payments totaling $5,968,713.19 to AGENCY.COM for the work performed on the websites and such payment was not made with any assertion of a claim or under protest.

15.     Financial Times did not communicate any alleged performance issues or other alleged difficulties with the FTYourMoney Website to AGENCY.COM until after AGENCY.COM demanded payment of its outstanding invoices in July 2000.

16.     On July 20, 2000, Financial Times sent a letter to AGENCY.COM

4

advising AGENCY.COM that Financial Times would be placing AGENCY.COM's "account on hold and suspending payment on [AGENCY.COM's] invoices." The letter suggested that Financial Times was taking this action because the FTYourMoney Website allegedly had "design faults."

17. Financial Times prepared an August 14, 2000 analysis of alleged technical problems with the work done by AGENCY.COM on the websites. On September 8, 2000, AGENCY.COM responded to the Financial Times' August 14, 2000 document. In its September 8th response, AGENCY.COM explained a number of the reasons why the August 14th analysis was incorrect and that AGENCY.COM had fully performed its obligations under the Agreements.

18. On September 15, 2000, Financial Times requested additional technical information with respect to the architecture and performance of the websites. AGENCY.COM provided this information to Financial Times on September 22, 2000. Financial Times prepared an October 6, 2000 report acknowledging that AGENCY.COM had addressed each of the alleged technical issues set forth in the Financial Times' August 14, 2000 document and that AGENCY.COM had provided the additional technical information requested in the Financial Times' September 15, 2000 document.

19. To date, Financial Times has not paid AGENCY.COM the fees properly due and owing to AGENCY.COM in the amount of $746,829. This amount is reflected in invoices dated June 13, 2000 through August 7, 2000 for services delivered by AGENCY.COM from May 2000 through August 2000.

20. AGENCY.COM has repeatedly demanded payment from Financial

Times but Financial Times has failed to honor that demand.

21.     There is now due and owing from Financial Times to AGENCY.COM the principal sum of $746,829, plus prejudgment interest in accordance with the Agreements.

22.     Financial Times' failure to pay the amount outstanding for services delivered by AGENCY.COM constitutes a breach of the Agreements, and violates Financial Times' obligation to pay to AGENCY.COM amounts due for services that AGENCY.COM has provided to Financial Times.

### First Claim For Relief
### (Breach Of Contract)

23.     AGENCY.COM repeats and realleges the allegations set forth in paragraphs 1 through 22 of this Complaint as if fully set forth herein.

24.     AGENCY.COM substantially performed as it had agreed pursuant to the Agreements.

25.     As a result of Financial Times' failure to compensate AGENCY.COM as agreed, Financial Times has breached the Agreements.

26.     As a result of such breach, AGENCY.COM has been damaged in the amount of $746,829 plus prejudgment interest.

### Second Claim For Relief
### (Quantum Meruit)

27.     AGENCY.COM repeats and realleges the allegations set forth in paragraphs 1 through 26 of this Complaint as if fully set forth herein.

28.     In the alternative, AGENCY.COM has provided valuable goods and performed valuable services to Financial Times in good faith.

29. Financial Times accepted and retained, with the expectation of compensating AGENCY.COM, the goods provided and services performed by AGENCY.COM and used those goods and services in the launch of its FTYourMoney Website, and continues to use them in the conduct of its business.

30. AGENCY.COM provided the goods and performed the services with the expectation that Financial Times would compensate it for such goods and services.

31. As a result of Financial Times having received the benefit of AGENCY.COM's goods, services and performance without compensating AGENCY.COM, AGENCY.COM has been damaged.

32. Equity and good conscience require that AGENCY.COM receive compensation for the goods it provided and the services it performed.

33. As a result of the foregoing, AGENCY.COM is entitled to the reasonable value of such goods and services in an amount to be determined by the Court but not in an amount less than the sum of $746,829.

### Prayer for Relief

WHEREFORE, AGENCY.COM demands judgment against defendants as follows:

34. On the first and second claims for relief the sum of $746,829;

35. Prejudgment interest thereon, pursuant to the Agreements; and

36. AGENCY.COM's costs and disbursements incurred herein together with such other and further relief as the Court deems just and proper.

## Jury Demand

AGENCY.COM demands a trial by jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure of all issues triable of right by a jury.

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY & POPEO, P.C.

By: _____
Peter Saparoff, BBO# 441740
Adam Sisitsky, BBO# 637532
One Financial Center
Boston, Massachusetts  02111
(617) 542-6000

Attorneys for Plaintiff

Of Counsel:

    Robert F. Perry, Esq.
    Mark W. Rueh, Esq.
    KENYON & KENYON
    One Broadway
    New York, New York 10004
    (212) 425-7200

Dated: Boston, Massachusetts
December 15, 2000

LITDOCS:1233397.1(QFP101!.DOC)